[Cite as *State v. Beasley*, 2019-Ohio-719.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 17AP-629 |
| v. | : | (M.C. No. 15TRC-165742) |
| David E. Beasley, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 28, 2019

**On brief:** *Zach Kline*, City Attorney, *Lara N. Baker*, City Solicitor, and *Melanie R. Tobias*, for appellee. **Argued:** *Melanie R. Tobias*.

**On brief:** *Carpenter Lipps & Leland LLP, Kort Gatterdam*, and *David F. Hanson*, for appellant. **Argued:** *David F. Hanson*.

APPEAL from the Franklin County Municipal Court

DORRIAN, J.

{¶ 1} Defendant-appellant, David E. Beasley, appeals the judgment of the Franklin County Municipal Court finding him guilty of operating a vehicle under the influence ("OVI"), pursuant to a jury verdict, and imposing sentence. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On September 1, 2015, plaintiff-appellee, City of Columbus, charged appellant with two criminal counts: (1) OVI in violation of Columbus City Code 2133.01(A)(1)(a), and (2) OVI in violation of R.C. 4511.19(A)(2).

{¶ 3} On March 22, 2016, appellant filed a motion to suppress evidence. On April 18, 2016, appellee filed a memorandum contra appellant's motion to suppress. On

February 22, 2017, the trial court held a hearing on the motion to suppress. At the suppression hearing, appellee presented testimony from Zachariah West, a police officer with the Columbus Division of Police. The same day, February 22, 2017, the court filed an entry denying appellant's motion to suppress, finding the initial encounter was consensual and Officer West had probable cause to arrest appellant.

{¶ 4} On July 31, 2017, a jury trial commenced. Officer West testified that on September 1, 2015, at approximately 1:44 a.m., he noticed a vehicle parked with its lights off at a closed gas station on Parsons Avenue in Columbus. Officer West approached the passenger side of the vehicle and observed two individuals in the vehicle, later identified as appellant in the driver's seat and Kendra Lett in the passenger seat. Immediately after he initiated a conversation with appellant and Lett, Officer West smelled the odor of an alcoholic beverage and marijuana and observed keys in the vehicle's ignition. Officer West moved to the driver's side of the vehicle and spoke with appellant.

{¶ 5} Officer West smelled a stronger odor of alcohol coming from appellant's breath and observed appellant was "fumbling around" in the vehicle. (July 31, 2017 Tr. at 130.) According to Officer West, appellant claimed he had pulled over into the gas station parking lot because he had lost his music player between the seats of the vehicle. When asked by Officer West whether he had been drinking prior to parking the vehicle, appellant responded affirmatively. Officer West returned to his police cruiser to check the validity of appellant's license and ascertain whether appellant had any outstanding warrants. Because his police cruiser did not have a recording device for purposes of conducting field sobriety tests, Officer West radioed Officer Duane Derwacter of the Columbus Division of Police for assistance.

{¶ 6} While he waited for Officer Derwacter to arrive, Officer West removed appellant from his vehicle, placed him in handcuffs, and seated him in the rear of his police cruiser. When Officer Derwacter arrived, Officer West removed appellant from the cruiser and placed him in clear view of Officer Derwacter's recording equipment. Appellant, however, refused to begin the field sobriety tests. As a result, Officer Derwacter placed him back in handcuffs and returned him to the rear of the police cruiser.

{¶ 7} After placing appellant back in the cruiser, Officer West returned to appellant's vehicle and spoke with Lett, whom he suspected was under the influence of

alcohol because of the smell of alcohol on her breath and her slurred speech. Officer West explained the situation to Lett and returned to the cruiser. According to Officer West, appellant was "upset, asking basically why he was being arrested." (July 31, 2017 Tr. at 135.) Officer West informed appellant he needed to perform the field sobriety tests in order to be released. Appellant then agreed to perform the field sobriety tests.

{¶ 8} Officer West removed appellant from the cruiser and placed him in front of Officer Derwacter's recording equipment. Officer West testified appellant showed impairment on each of the three tests he completed. Following the completion of the field sobriety tests, Officer West arrested appellant for OVI and placed him in Officer Derwacter's cruiser. Officer West testified that appellant, while in the cruiser, stated he had not been driving but admitted to being drunk. Officer West offered to administer a breath test to appellant, but appellant refused to submit to a breath test. Following appellant's arrest, Officer West researched appellant's prior traffic record and found appellant had been previously convicted for OVI.

{¶ 9} Appellant testified that on August 31, 2015, he was with Lett when a friend named Ashley Scott contacted him. Appellant and Lett agreed to meet Scott at the gas station on Parsons Avenue in Columbus. Appellant parked his vehicle at the gas station and gave the key to his vehicle to Lett. Appellant testified Scott drove appellant and Lett from the gas station to a bar in Columbus where appellant and Lett had "drinks." (July 31, 2017 Tr. at 204.)

{¶ 10} After consuming drinks, Scott drove appellant and Lett back to appellant's vehicle at the gas station. Lett arranged for someone to give her and appellant a ride from the gas station. While they waited for their ride to arrive, Lett used appellant's key to open the doors to the vehicle. Appellant testified the keys were never put in the vehicle's ignition. Appellant and Lett were sitting in the vehicle and talking when they were approached by a police officer. Appellant testified he initially denied to the officer that he had been driving the vehicle. However, because he wanted to leave and did not want to take a sobriety test, appellant testified he eventually lied, saying he was driving and pulled over to get his music player. Appellant testified he was arrested and charged with "a fourth time DUI." (July 31, 2017 Tr. at 212.)

{¶ 11} On cross-examination, appellant admitted to having three prior convictions for OVI. Appellant stated he intentionally did not park his vehicle in a marked parking space at the gas station before heading to the bar. Appellant testified he lied to the officer about driving and searching for his music player because the officer was "coercing" appellant to take a sobriety test. (July 31, 2017 Tr. at 224.)

{¶ 12} Lett testified she had a child with appellant. On the night in question, appellant gave her the keys to his vehicle at the gas station before they left with Scott. When she and appellant returned to the vehicle, Lett did not place the keys in the ignition but, rather, placed them in a cup holder in the vehicle. On cross-examination, Lett admitted she and appellant became intoxicated from drinking at the bar.

{¶ 13} Scott testified she worked for appellant. At approximately 11:00 p.m. on August 31, 2015, she called appellant and agreed to meet him and Lett at the gas station before going to the bar. She stated they stayed at the bar for about one hour before she drove appellant and Lett back to appellant's vehicle at approximately 1:00 a.m.

{¶ 14} On August 4, 2017, the trial court filed an entry reflecting the jury's verdict finding appellant guilty of both the charged offenses. On the same day, the trial court filed an entry sentencing appellant to 180 days incarceration with 120 days suspended, suspending appellant's driver's license for 3 years, and imposing a 2-year period of community control. On March 14, 2018, the trial court filed a nunc pro tunc entry reflecting that appellee elected to sentence appellant on the charge of OVI in violation of Columbus City Code 2133.01(A)(1)(a) only.

## II. Assignments of Error

{¶ 15} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED [APPELLANT'S] MOTION TO SUPPRESS HIS UNLAWFUL ARREST BY THE POLICE, AND THE EVIDENCE GATHERED FOLLOWING HIS UNLAWFUL ARREST BY THE POLICE, IN VIOLATION OF [APPELLANT'S] RIGHTS UNDER THE FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10, 14, AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

[II.] THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

[III.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO PROPERLY INSTRUCT THE JURY ON PHYSICAL CONTROL, IN VIOLATION OF [APPELLANT'S] FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

[IV.] APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

For ease of discussion, we consider appellant's assignments of error out of order.

## III.  Third Assignment of Error—Lesser-Included Offense

{¶ 16} In his third assignment of error, appellant asserts the trial court erred by failing to instruct the jury on the lesser-included offense of having physical control of a vehicle while under the influence ("the offense of physical control").

{¶ 17} Because appellant failed to request an instruction on a lesser-included offense, he has forfeited all but plain error. *State v. English*, 10th Dist. No. 13AP-88, 2014-Ohio-89, ¶ 26; *State v. Riley*, 10th Dist. No. 06AP-1091, 2007-Ohio-4409, ¶ 4; *State v. McDowell*, 10th Dist. No. 10AP-509, 2011-Ohio-6815, ¶ 44. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15-16.  Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *See State v. Lindsey*, 87 Ohio St.3d 479, 482 (2000).  "A showing of plain error requires 'a reasonable *probability* that the error resulted in prejudice.' (Emphasis sic.)." *State v. Myers*, ___ Ohio St.3d ___, 2018-Ohio-1903, ¶ 130, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22.

{¶ 18} We begin by noting this court has not previously addressed the question of whether the offense of physical control is a lesser-included offense of OVI. We consider this lack of precedent as part of determining whether there was plain error.

{¶ 19} The question of whether a particular offense should be submitted to the finder of fact as a lesser-included offense involves a two-tiered analysis. *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, ¶ 6, citing *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, ¶ 13. In the first tier, also referred to as the "statutory elements [test]," a court considers the purely legal question of whether one offense is generally a lesser-included offense of the charged offense. *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281 (1987). When analyzing the first tier, a court must find an offense is a lesser-included offense of another where: (1) the offense carries a lesser penalty, (2) the greater offense cannot, as statutorily defined, be committed without the lesser offense, as statutorily defined, also being committed, and (3) some element of the greater offense is not required to prove commission of the lesser offense. *Evans* at paragraph two of the syllabus, modifying *State v. Deem*, 40 Ohio St.3d 205, 209 (1988). *See State v. Smith*, 117 Ohio St.3d 447, 2008-Ohio-1260, paragraph one of the syllabus, modifying *Deem* (holding that when a statute sets forth mutually exclusive ways of committing the greater offense, a court is required to apply the second part of the statutory elements test separately to each alternate method of committing the greater offense). In the second tier, a court considers the evidence in a particular case and determines whether " ' "a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ' " *Deanda* at ¶ 6, quoting *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, ¶ 11.

{¶ 20} Under *Evans*, we begin by comparing the statutory elements of the offenses in question. Here, appellant was convicted of OVI in violation of Columbus City Code 2133.01(A)(1)(a), a first-degree misdemeanor. Columbus City Code 2133.01(A)(1)(a) provides that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this City, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Under Columbus City Code 2101.201, "operate" is defined as "to cause or have caused movement of a vehicle." As applied to Columbus City Code 2133.01, "vehicle" is defined as:

> [E]very device, including a motorized or non-motorized bicycle, in, upon or by which any person or property may be transported or drawn upon a street or highway, except that "vehicle" does not include any motorized wheelchair, any electric personal assistive mobility device, or any device that is used exclusively upon stationary rails or tracks, or any other device that is moved by human power.

Former Columbus City Code 2101.51.

{¶ 21} Appellant contends the jury should have been instructed on the offense of physical control pursuant to R.C. 4511.194, a first-degree misdemeanor. R.C. 4511.194(B) provides:

> No person shall be in physical control of a vehicle, streetcar, or trackless trolley if, at the time of the physical control, any of the following apply:
>
> (1) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
>
> (2) The person's whole blood, blood serum or plasma, breath, or urine contains at least the concentration of alcohol specified in division (A)(1)(b), (c), (d), or (e) of section 4511.19 of the Revised Code.
>
> (3) Except as provided in division (E) of this section, the person has a concentration of a listed controlled substance or a listed metabolite of a controlled substance in the person's whole blood, blood serum or plasma, or urine that equals or exceeds the concentration specified in division (A)(1)(j) of section 4511.19 of the Revised Code.

Under R.C. 4511.194(A)(2), "[p]hysical control" is defined as "being in the driver's position of the front seat of a vehicle or in the driver's position of a streetcar or trackless trolley and having possession of the vehicle's, streetcar's, or trackless trolley's ignition key or other ignition device." As applied to Ohio Revised Code Chapter 4511, "vehicle" is defined as:

> [E]very device, including a motorized bicycle, in, upon, or by which any person or property may be transported or drawn upon a highway, except that "vehicle" does not include any motorized wheelchair, any electric personal assistive mobility device, any device that is moved by power collected from overhead electric trolley wires or that is used exclusively upon stationary rails or tracks, or any device, other than a bicycle, that is moved by human power.

Former R.C. 4511.01(A).

{¶ 22} Our survey of Ohio law reveals only a few cases which may apply to address the *Evans* test. There is some precedent that could support finding that OVI can be committed without the offense of physical control also being committed. *State v. Taylor*, 9th Dist. No. 12CA010258, 2013-Ohio-2035, ¶ 7. *See State v. Hlinovsky*, 7th Dist. No. 09 BE 19, 2011-Ohio-6421, ¶ 94 (noting that because "it is possible for an impaired passenger to commit OVI but not commit a physical control violation," the offense of physical control "seems to conflict with the second prong" of the statutory elements test). As appellant points out there is also precedent that could support a finding that an OVI cannot be committed without the offense of physical control also being committed. *State v. Schultz*, 8th Dist. No. 90412, 2008-Ohio-4448, ¶ 31 (stating that "being in physical control of a vehicle while under the influence in violation of R.C. 4511.194 is *likely* the lesser included offense of OVI in violation of R.C. 4511.19" in the context of considering a sentencing enhancement).[1] (Emphasis added.) We consider this lack of uniform and overwhelming precedent in determining whether there was plain error.

{¶ 23} The city encourages us to expressly find that physical control is not a lesser included offense of operating a vehicle while under the influence of alcohol. The city suggests we consider the plain language of the statutes in question and apply our finding in *Columbus v. Freeman*, 181 Ohio App.3d 320, 2009-Ohio-1046 (10th Dist.), that the statutory definition of "operate" is not limited to drivers and "can encompass a person in the vehicle whose conduct causes movement of the vehicle by grabbing the steering wheel." *Freeman* at ¶ 17. It is not necessary, at this time, for this court to engage in this consideration. Given the fact that there is no precedent on the question from our own district, the fact that there is a lack of uniform and overwhelming precedent on the issue from other courts of this state, as well as the fact that counsel's decision to forego requesting the instruction could have been part of the trial strategy, we cannot say that it was plain error for the trial court to not give the lesser included offense instruction.

{¶ 24} Accordingly, we overrule appellant's third assignment of error.

---

[1] We note that, in *Schultz*, the Eighth District Appellate Court also states in a footnote that "[t]he term 'operate' " as used in the context of an OVI "is still broad enough to encompass an impaired passenger who grabs the steering wheel of a moving vehicle," but that "an impaired passenger cannot be convicted of a physical control violation because he is not in the driver's seat." *Id.* at ¶ 30, fn. 6.

## IV.   Second Assignment of Error—Sufficiency and Manifest Weight of the Evidence

{¶ 25} In his second assignment of error, appellant asserts his conviction was supported by insufficient evidence and against the manifest weight of the evidence. Appellant raises several arguments in support of his assignment of error, but does not differentiate between sufficiency and manifest weight of the evidence.  As sufficiency and manifest weight of the evidence are "distinct concepts" that are "quantitatively and qualitatively different," we shall address them separately.  *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 30, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

### A.  Sufficiency of the Evidence

{¶ 26} Sufficiency of the evidence is a legal standard that tests whether the evidence is adequate to sustain a verdict as a matter of law.  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11; *Thompkins* at 386.  In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction.  *Id.*  "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction."  *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18, citing *State v. Elqatto*, 10th Dist. No. 11AP-914, 2012-Ohio-4303, ¶ 20.

{¶ 27} As previously discussed, appellant was convicted of OVI in violation of Columbus City Code 2133.01(A)(1)(a), which provides that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this City, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." Under Columbus City Code 2101.201, "operate" is defined as "to cause or have caused movement of a vehicle."

{¶ 28} Appellant contends there was insufficient testimony to support he consumed alcohol before driving.  Appellant also asserts there was no evidence he was seen driving

under the influence of alcohol. Finally, appellant asserts that even assuming he drove the vehicle, there was no evidence regarding how much time had passed from the time he parked until he was approached by Officer West.

{¶ 29} It is immaterial that Officer West did not personally observe appellant driving as testimony at trial and circumstantial evidence supported the conclusion that appellant had been driving while under the influence. *State v. Davis*, 11th Dist. No. 2008-L-021, 2008-Ohio-6991, ¶ 57. Officer West observed the keys in the ignition and smelled the odor of marijuana and alcohol coming from the vehicle, with a stronger odor of alcohol coming from appellant's breath. Officer West witnessed appellant "fumbling around" between the seats, and testified appellant stated "he was just pulling over because he lost his music player between the seats." (July 31, 2017 Tr. at 131.) Testimony and evidence submitted at trial reflected appellant's vehicle was not parked in a marked parking space at the gas station, consistent with someone pulling over temporarily. When Officer West asked appellant "if he had been drinking prior to parking his vehicle there," appellant responded affirmatively. (July 31, 2017 Tr. at 131.)

{¶ 30} Appellant admitted at trial that he told Officer West he had been drinking and that he pulled over in order to search for his music player. Appellant showed impairment on each of the three tests he completed.

{¶ 31} Officer West's testimony, appellant's admissions, the smell of alcohol on appellant's breath and burnt marijuana in the vehicle, and the results of the field sobriety tests provided sufficient direct and circumstantial evidence to find appellant had been operating the vehicle under the influence of alcohol or drugs. *State v. Fausnaugh*, 10th Dist. No. 11AP-842, 2012-Ohio-4414, ¶ 26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-55 (1988) (stating that "[u]nder Ohio law, * * * circumstantial evidence can have the same probative value as direct evidence, and '[a] conviction can be sustained based on circumstantial evidence alone' "). Thus, viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence supported appellant's conviction.

## B. Manifest Weight of the Evidence

{¶ 32} Whereas a challenge to the sufficiency of the evidence tests whether the evidence is adequate to sustain a verdict as a matter of law, a challenge to the manifest

weight of the evidence relates to persuasion and tests whether the greater amount of credible evidence supports the verdict. *Eastley* at ¶ 11-13; *Thompkins* at 386-87. The Supreme Court of Ohio has stated:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990).

{¶ 33} When reviewing a challenge to the manifest weight of the evidence, an appellate court cannot simply exchange its view for that of the trier of fact but, instead, must " 'review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 24, quoting *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In reviewing the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). *See Eastley* at ¶ 21.

{¶ 34} Appellant argues that "conflicting evidence was submitted as to whether [appellant] 'operated' the vehicle." (Appellant's Brief at 30.) However, "a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. "[T]he jury may take note

of the inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.' " *State v. Taylor*, 10th Dist. No. 17AP-103, 2017-Ohio-8327, ¶ 37, quoting *Raver* at ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). *See State v. Watkins*, 10th Dist. No. 14AP-807, 2016-Ohio-1029, ¶ 19; *State v. Coleman-Muse*, 10th Dist. No. 15AP-566, 2016-Ohio-5636, ¶ 18. It was within the province of the jury, as trier of fact, to believe the testimony of the prosecution's witnesses and disbelieve the testimony of the defense's witnesses. *State v. Hawk*, 10th Dist. No. 12AP-895, 2013-Ohio-5794, ¶ 59. Upon reviewing of the record, weighing the evidence, and considering the credibility of the witnesses, we cannot find the trier of fact clearly lost its way in resolving conflicts in the evidence presented at trial. Therefore, we find appellant's conviction was not against the manifest weight of the evidence.

{¶ 35} Accordingly, we overrule appellant's second assignment of error.

## V.  First Assignment of Error—Motion to Suppress

{¶ 36} In his first assignment of error, appellant asserts the trial court erred in denying his motion to suppress.

### A.  Standard of Review

{¶ 37} "The review of a motion to suppress is a mixed question of law and fact." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. In evaluating the motion to suppress, the trial court acts as the finder of fact and, therefore, is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.  See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.").

### B.  Applicable Law

### 1. Constitutional Protections

{¶ 38} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized."  Article I, Section 14 of the Ohio Constitution contains a nearly identical provision:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

*See also* R.C. 2933.22(A) and Crim.R. 41(C).

{¶ 39} Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment of the United States Constitution.  *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981) ("We are disinclined to impose greater restrictions in the absence of explicit state constitutional guarantees protecting against invasions of privacy that clearly transcend the Fourth Amendment. * * * It is our opinion that the reach of Section 14, Article I, of the Ohio Constitution * * * is coextensive with that of the Fourth Amendment."); *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997) (stating that courts "should harmonize * * * interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise"); *State v. Jones*, 88 Ohio St.3d 430, 434 (2000), *modified in State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, syllabus.  However, it is well-recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238.  *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 38 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall.").  Thus, in certain circumstances, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution.  *Brown*, 2003-Ohio-3931, at ¶ 22; *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 ("Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment

against searches and seizures conducted by members of law enforcement who lack authority to make an arrest."). *See Robinette* at 238 (noting that a "state may impose greater restrictions on police activity pursuant to its own state constitution than is required by federal constitutional standards").

{¶ 40} "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991), citing *Katz v. United States*, 389 U.S. 347, 360 (1967). "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Id.* In keeping with this principle, both the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures, subject to certain exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009), quoting *Katz* at 357 (" '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' "); *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 20, citing *State v. Fowler*, 10th Dist. No. 10AP-658, 2011-Ohio-3156, ¶ 11-12. Common exceptions to the warrant requirement include a consensual encounter with a police officer and an investigative detention, commonly referred to as a *Terry* stop.[2]

## 2. Consensual Encounter

{¶ 41} An encounter between a police officer and a member of the public is consensual if a reasonable person would feel free to disregard the officer's questions or terminate the encounter and go about his or her business. *Florida v. Bostick*, 501 U.S. 429, 434 (1991), citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Because a consensual encounter does not involve a restraint on a person's liberty or privacy, such encounter does not constitute a seizure for purposes of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16 ("[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). Thus, consensual encounters between police officers and members of the public do not implicate Fourth Amendment protections. *Florida v. Royer*, 460 U.S. 491,

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

498 (1983) (plurality opinion) ("If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed."); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 20 (10th Dist.); *State v. Moyer*, 10th Dist. No. 09AP-434, 2009-Ohio-6777, ¶ 13.

{¶ 42} "A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct." *State v. Westover*, 10th Dist. No. 13AP-555, 2014-Ohio-1959, ¶ 15, citing *Mendenhall* at 556. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine identification, and request consent to search luggage, provided they do not convey a message that compliance with their requests is required." (Citations omitted.) *Bostick* at 434-35. "Generally, when a police officer merely approaches and questions persons seated within parked vehicles, a consensual encounter occurs that does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." *Jones*, 2010-Ohio-2854, ¶ 20, citing *State v. McClendon*, 10th Dist. No. 09AP-554, 2009-Ohio-6421, ¶ 8.

### 3. Investigative Detention

{¶ 43} An investigative detention, unlike a consensual encounter, constitutes a seizure for purposes of the Fourth Amendment. *Jones*, 2010-Ohio-2854, at ¶ 16. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (finding that a traffic stop entails a seizure "even though the purpose of the stop is limited and the resulting detention quite brief"). Under *Terry*, an investigative detention may be conducted without violating the Fourth Amendment if the investigating officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). *See Terry* at 21; *State v. Fisher*, 10th Dist. No. 10AP-746, 2011-Ohio-2488, ¶ 18, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61 (1990) ("To justify a brief investigative stop or detention of an individual pursuant to *Terry*, a police officer must be able to cite specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity."). Although the standard for finding reasonable suspicion is

less stringent than for a finding of probable cause, it cannot be met by an officer's mere "inchoate and unparticularized suspicion or 'hunch.' " *Terry* at 27. *See State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, citing *Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion can arise from information that is less reliable than that required to show probable cause."); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (finding that although a reasonable suspicion "requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop").

{¶ 44} An appellate court reviews the propriety of an investigative detention in light of the totality of the surrounding circumstances. *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus, approving and following *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer* at 500. "[A]n investigatory stop which is prolonged and extends beyond the scope of the initial detention must be supported by a reasonable suspicion the suspect is engaged in another criminal activity." *State v. Owens*, 10th Dist. No. 03AP-423, 2004-Ohio-5159, ¶ 18, citing *State v. Venham*, 96 Ohio App.3d 649, 656 (4th Dist.1994).

## 4. Arrest

{¶ 45} "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411 (1976). "In determining whether a police officer has probable cause to arrest a suspect for OVI, a court considers whether, at the moment of arrest, the officer had information within the officer's knowledge, or derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe the suspect was driving under the influence of alcohol, drugs, or both." *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 20, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*. " 'The subjective intentions of the [arresting] officers are irrelevant in a probable cause determination. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.' " (Internal Citations omitted.) *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-

Ohio-5060, ¶ 25, quoting *Columbus v. Weber*, 10th Dist. No. 06AP-845, 2007-Ohio-5446, ¶ 8. In determining whether probable cause existed, a reviewing court should examine the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *State v. Brown*, 10th Dist. No. 17AP-351, 2018-Ohio-1476, ¶ 22.

## C. Analysis

{¶ 46} At the suppression hearing, appellee presented testimony from Officer West. Importantly, unlike at trial, Officer West never stated he placed appellant under arrest prior to administering the field sobriety tests. Additionally, the recording from Officer Derwacter's police cruiser was not played or introduced into evidence.

{¶ 47} After Officer West's testimony, appellee argued "[t]he issue of impairment, I believe, is clearly established by the three field sobriety tests showing indications of impairment on the [horizontal gaze nystagmus test], the walk-and-turn and the one-leg stand in combination with the odor of alcohol, the marijuana, the bloodshot, glassy eyes and admission of consuming alcohol is sufficient -- beyond sufficient for probable cause." (Feb. 22, 2017 Tr. at 27.) Appellant's counsel responded that Officer West lacked reasonable suspicion to stop appellant and to "expand the scope to have the field test done or have the OVI investigation at that point." (Feb. 22, 2017 Tr. at 28.)[3]

{¶ 48} The trial court made the following findings on the record at the hearing:

> First off, this wasn't a stop; this was a consensual encounter. Any time a vehicle is parked in a business that is closed, that type of thing, an officer can approach the vehicle and engage in conversation with the occupants of the vehicle. That is not considered a stop, as that is a consensual encounter. Now, I have -- I'm looking now, since it was referenced, at the 2255 -- that it was readily explained. There is writing on there that indicates that the defendant admitted to driving. When he got there, I don't know where the keys where. I'm not exactly sure.
>
> But, for purposes of this hearing, I do find that the officer had a reasonable suspicion to continue his inquiry after the

---

[3] We note that, at the suppression hearing, appellant's counsel stipulated for purposes of the hearing as to "the officer's training, the results, or conducting the field tests," and stated that "[i]t's strictly going to be an argument based on reasonable suspicion and probable cause here today." (Feb. 22, 2017 Tr. at 2.) Appellee responded: "[R]egarding probable cause to arrest, that would mean [appellee] would have to show evidence that [appellant] was impaired. If we're not going to go through the field sobriety tests, I don't know how we're going to get to a probable cause determination of impairment." (Feb. 22, 2017 Tr. at 2-3.) Appellant's counsel clarified he had "no objection to discussing the results of the field sobriety tests here," but stated "[w]e're not going to be challenging the manner with which they were conducted" or "substantial compliance." (Feb. 22, 2017 Tr. at 3.)

consensual encounter with the defendant. Based -- And there doesn't seem to be any objection thus far to the results of the test. I did note here that there were four clues on the walk-and-turn and two clues for the impairment. And on the one-leg stand, the defendant did put his foot down and use his arm for balance. So, I mean, I do find, for the purposes of the hearing, that there was probable cause to arrest the defendant for OVI, again, for purposes of this hearing.

(Feb. 22, 2017 Tr. at 29.)

{¶ 49} On appeal, appellant contends the video evidence presented at trial and the trial testimony of Officer West "prove [appellant] was arrested well before the field sobriety tests were administered, contrary to the belief of defense counsel, [appellee], and the trial court at the hearing on the motion to suppress." (Appellant's Brief at 24.) Appellee conceded at oral argument that appellant was placed under arrest prior to undergoing the field sobriety tests, as demonstrated by the video evidence presented at trial.

{¶ 50} Appellant's contentions regarding alleged error in denying the motion to suppress are entirely based on differences between Officer West's testimony at the suppression hearing and at trial. However, because our review of the denial of a motion to suppress on appeal is limited to evidence presented at the suppression hearing, we must disregard the evidence presented at trial. *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 45-46 (10th Dist.) (holding that "in reviewing a trial court's ruling on a motion to suppress, an appellate court may only consider evidence that was presented during the suppression hearing, and may not consider evidence presented at trial"); *State v. Hale*, 8th Dist. No. 92856, 2010-Ohio-3306, ¶ 9; *State v. Tapke*, 1st Dist. No. C-060494, 2007-Ohio-5124, ¶ 47; *State v. Wright*, 7th Dist. No. 03 MA 112, 2004-Ohio-6802, ¶ 30. As a result, appellant's contentions are more properly addressed in our resolution of his fourth assignment of error regarding ineffective assistance of counsel at the suppression hearing.[4]

{¶ 51} Accordingly, we overrule appellant's first assignment of error.

## VI. Fourth Assignment of Error—Ineffective Assistance of Counsel

{¶ 52} In his fourth assignment of error, appellant asserts he received ineffective assistance of counsel for five reasons: (1) failure to properly argue the motion to suppress,

---

[4] We note that appellant concedes this assignment of "error can be considered as ineffective assistance counsel" because "[t]o the extent trial counsel failed to properly present and argue the motion to suppress, counsel performed deficiently, to [appellant's] prejudice." (Appellant's Brief at 27, fn. 3.)

(2) failure to move for acquittal after the close of appellee's case, (3) failure to request a jury instruction on offense of physical control, (4) failure to provide a witness list prior to trial resulting in one witness not testifying, and (5) making comments during voir dire suggesting that appellant bore the burden of proof and indicating appellant had a criminal history. Appellant also asserts the cumulative effect of the above errors prevented him from receiving a fair trial.

{¶ 53} We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "Judicial scrutiny of counsel's performance must be highly deferential [and] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. We will consider each of appellant's claims of ineffective assistance in turn.

## A. Motion to Suppress

{¶ 54} First, appellant argues trial counsel was ineffective at arguing the motion to suppress. Specifically, appellant contends trial counsel wrongly focused on whether Officer West possessed reasonable suspicion to conduct the field sobriety tests since appellant was already under arrest when the tests were administered. Because of counsel's failure to develop testimony, introduce evidence, and make arguments related to whether probable cause existed at the moment of his arrest, appellant argues the trial court was unable to properly adjudicate the motion to suppress.

{¶ 55} As previously noted, at oral argument, appellee conceded appellant was placed under arrest prior to the administration of the field sobriety tests, as demonstrated by the video evidence presented at trial. Nevertheless, appellee argues Officer West had probable cause to arrest appellant for OVI based on the existence of other factors before the

trial court at the suppression hearing. As a result, appellee asserts appellant suffered no prejudice from trial counsel's failure to argue probable cause.

{¶ 56} For purposes of analysis, we assume without deciding that appellant's counsel performed deficiently by failing to argue at the suppression hearing whether probable cause existed at the moment of appellant's arrest. We proceed to examine whether, but for this failure, there is a reasonable probability the outcome of the proceeding would have been different. In order to determine whether appellant's warrantless arrest was in violation of the Fourth Amendment, we must consider two questions: (1) when appellant was placed under arrest, and (2) whether the arrest was supported by probable cause at the moment it occurred. *See State v. Hodge*, 10th Dist. No. 11AP-1099, 2012-Ohio-4306, ¶ 12.

{¶ 57} We begin by considering when appellant was placed under arrest. Appellant advances two seemingly contradictory arguments for when he was placed under arrest. First, appellant asserts that "approximately twelve minutes **before** the field sobriety tests, he was actually placed under arrest." (Emphasis sic.) (Appellant's Brief at 4.) Based on the video evidence submitted at trial, approximately 12 minutes elapsed between appellant's initial refusal to participate in the field sobriety tests and his ultimate agreement to submit to the tests. Thus, appellant appears to argue that he was arrested after he initially refused to participate in field sobriety testing.[5] Second, appellant argues that "[t]he proper inquiry at the suppression hearing should have been whether Officer West had probable cause to arrest [appellant] before he refused to take the field sobriety tests, not after." (Appellant's Brief at 24.) Appellee contends appellant was placed under arrest after his refusal to submit to the field sobriety tests. In order to resolve this question, we consider the entirety of appellant's interaction with Officer West.

{¶ 58} An arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Darrah*, 64 Ohio St.2d 22, 26 (1980). *See Columbus v. Clark*, 10th Dist. No. 14AP-719, 2015-Ohio-2046, ¶ 34; *State v. Edwards*, 10th Dist. No. 15AP-879, 2016-Ohio-4771, ¶ 18. "[A]n officer need not state, 'You are under arrest.' " *Clark* at

---

[5] We note that this is consistent with argument advanced by appellant's counsel at oral argument.

¶ 34, quoting *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, ¶ 14 (1st Dist.). "Rather, arrest 'signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime.' " *Id.*, quoting *Darrah* at 26.

{¶ 59} Ultimately, "the point at which an arrest occurs depends on the circumstances of the particular case." *Columbus v. Galang*, 10th Dist. No. 02AP-1441, 2003-Ohio-4506, ¶ 16, citing *State v. Finch*, 24 Ohio App.3d 38, 39 (12th Dist.1985). *See In re Parks,* 10th Dist. No. 04AP-355, 2004-Ohio-6449, ¶ 10 ("The point at which an investigative detention exceeds its permissible scope and rises to the level of a full-fledged arrest is decided on a case-by-case basis."). "Factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds." (Quotations and citations omitted.) *Edwards* at ¶ 19.

### 1. Initial Encounter

{¶ 60} Here, the undisputed testimony establishes that Officer West approached appellant's vehicle, which was parked at a closed gas station in an unmarked space, and began a conversation with appellant and Lett. Thus, consistent with the trial court's findings at the suppression hearing, we find Officer West's initial conversation with appellant and Lett was a consensual encounter. *Jones*, 2010-Ohio-2854, ¶ 20, citing *McClendon* at ¶ 8.

### 2. Conduct Prior to Attempted Administration of Field Sobriety Tests

{¶ 61} After speaking with appellant and Lett, Officer West had appellant exit the vehicle in order to administer field sobriety tests. Officer West testified that he planned to administer field sobriety tests to appellant because of "[t]he odor of alcohol on his breath, the admitting to drinking prior to driving or prior to parking there, the way he was fumbling around in the vehicle." (July 31, 2017 Tr. at 132.) Officer West handcuffed appellant and placed him in the rear of his police cruiser. Officer West stated that his purpose in placing appellant in the rear of the cruiser was "[j]ust to detain him until I had received a video." (July 31, 2017 Tr. at 133.)

{¶ 62} Here, it is clear that Officer West's actions in removing appellant from his vehicle and securing him with handcuffs in the back of the police cruiser constituted, at a minimum, a seizure. *State v. Stricklin*, 6th Dist. No. L-10-1277, 2012-Ohio-1877, ¶ 11, citing *State v. Knox*, 2d Dist. No. 2005-CA-74, 2006-Ohio-3039, ¶ 11 ("In order to warrant removing a person from his vehicle to conduct field sobriety tests, a police officer must have reasonable articulable suspicion to believe that the person was driving under the influence of drugs or alcohol."). Based upon his observations prior to handcuffing appellant, we find Officer West had a reasonable, articulable suspicion to believe appellant was driving under the influence of drugs or alcohol.

{¶ 63} Next, we consider whether Officer West's use of force by removing appellant from his vehicle, handcuffing him, and placing him in the rear of the police cruiser exceeded the permissible scope of an investigative detention such that it rendered the detention a de facto arrest. We have previously stated that "the investigation 'by the police of an individual who is under temporary restraint * * * constitutes an intermediate level of police-citizen interaction, which is often referred to as "investigative detention," and such questioning does not invoke the panoply of Fourth Amendment protections.' " *Columbus v. Dials*, 10th Dist. No. 04AP-1099, 2005-Ohio-6305, ¶ 29, quoting *State v. Schultz*, 23 Ohio App.3d 130 (10th Dist.1985), paragraph three of the syllabus. Here, Officer West's stated his intent was not to arrest appellant at the moment he removed him from the car, but "[j]ust to detain him until I had received * * * video [recording equipment]." (July 31, 2017 Tr. at 133.) Although the officer's subjective intent is not controlling, it is supported by other evidence in the record.

{¶ 64} Here, the record reflects the incident occurred at a closed gas station, the vehicle's lights were off, it was early morning, and there were two people in appellant's vehicle. Although appellant was placed in handcuffs in addition to being placed in the rear of the police cruiser, we have previously held that the use of handcuffs, while a significant factor in determining whether an individual is subject to an investigatory stop or de facto

arrest, is not automatically conclusive.[6] *See Dials* at ¶ 29; *Edwards* at ¶ 19; *State v. Davis*, 10th Dist. No. 08AP-102, 2008-Ohio-5756, ¶ 13 (finding "the use of handcuffs does not automatically convert an investigative stop into an arrest"). *See also State v. Carter*, 2d Dist. No. 21999, 2008-Ohio-2588, ¶ 24; *State v. Dunson*, 2d Dist. No. 20961, 2006-Ohio-775, ¶ 17; *State v. Quesenberry*, 7th Dist. No. 99-BA-39 (May 24, 2001). Having a reasonable, articulable suspicion to believe appellant had driven under the influence of drugs or alcohol supported securing appellant away from the vehicle in order to further investigate. *See N. Olmsted v. Benning*, 8th Dist. No. 79548 (Apr. 4, 2002) (finding that "the potential for injury from a person driving, whom an officer suspects of being intoxicated, constitutes a dangerous condition, both for the officer, the driver and the community" and concluding "[t]herefore, the officer was justified in patting down the appellant and placing her in the squad car to prevent a suspected intoxicated person from driving away"). Further, there was no evidence Officer West searched appellant, used unreasonable force, or brandished his firearm. The detention lasted no longer than necessary to effectuate its purpose because appellant was released from the cruiser in order to complete field sobriety testing once Officer Derwacter arrived with recording equipment. *See Royer* at 500.

{¶ 65} Based on the above factors, we find appellant was not subject to arrest, but rather an investigative detention when he was handcuffed and placed in the back of Officer West's cruiser prior to his refusal to submit to the field sobriety tests. Further, we find this detention to be lawful as it was supported by reasonable suspicion.

### 3. Conduct After Attempted Administration of Field Sobriety Tests

{¶ 66} After Officer Derwacter arrived with recording equipment, Officer West removed appellant from the police cruiser, removed his handcuffs, and placed him in front of the recording equipment. The video evidence admitted at trial shows appellant conversing with Officer West before refusing to participate in field sobriety testing. At this

---

[6] We note other courts have cautioned regarding the substantial increase in force applied through the use of handcuffs, while accepting that the use of handcuffs does not automatically convert an investigatory detention. *See United States v. Taylor*, 716 F.2d 701, 709 (9th Cir.1983) (finding that "the use of handcuffs * * * substantially aggravat[es] the intrusiveness of an investigatory stop"); *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir.1989) (finding "handcuffs are restraints on freedom of movement *normally* associated with arrest" and stating "the thought of allowing police officers to handcuff persons when probable cause to arrest is lacking is a troubling one"). (Emphasis sic.)

point, appellee concedes appellant was placed under arrest.  Therefore, we must consider whether appellant's arrest was lawful.

{¶ 67} Appellant correctly asserts that we cannot rely on the results of the field sobriety tests to determine the existence of probable cause, since appellant completed the tests after his arrest. *Perkins* at ¶ 25; *State v. Walker*, 10th Dist. No. 97APA09-1219 (July 28, 1998).  However, this does not end our inquiry. Instead, we must examine the totality of circumstances present prior to appellant's arrest.  *See Homan* at 427 (finding the "totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered"); *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 19 ("Probable cause does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests."); *State v. Belmonte*, 10th Dist. No. 10AP-373, 2011-Ohio-1334, ¶ 11 ("Probable cause to arrest may exist, even without field sobriety test results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking."); *Mason v. Murphy*, 123 Ohio App.3d 592, 598 (12th Dist.1997).

{¶ 68} Here, Officer West first approached appellant's vehicle at a closed gas station in the early morning hours.  Officer West smelled the odor of marijuana and alcohol from the vehicle and observed the keys in the ignition.  Upon approaching appellant, Officer West noted the odor of alcohol was stronger from appellant's breath.  Officer West witnessed appellant "fumbling around" between the seats, and testified appellant stated that "he was just pulling over because he lost his music player between the seats."  (July 31, 2017 Tr. at 130-31.)  Testimony and evidence submitted at trial reflected that appellant's vehicle was not parked in a marked parking space at the gas station, consistent with someone pulling over temporarily.  Appellant admitted to Officer West he had been drinking prior to parking his vehicle.  Finally, appellant's refusal to participate in field sobriety tests is a relevant factor when determining the existence of probable cause.  *See State v. Blosser*, 10th Dist. No. 99AP-816 (Mar. 30, 2000); *State v. Hall*, 1st Dist. No. C-150317, 2016-Ohio-783, ¶ 30; *Findlay v. Jackson*, 3d Dist. No. 5-14-02, 2014-Ohio-5202, ¶ 38; *State v. May*, 7th Dist. No. 10 CO 23, 2011-Ohio-6637, ¶ 29; *State v. Djisheff*, 11th Dist. No. 2005-T-0001, 2006-

Ohio-6201, ¶ 31; *State v. Justice*, 4th Dist. No. 99CA631 (Nov. 16, 1999). *See also Kinlin v. Kline*, 749 F.3d 573, 580 (6th Cir.2014).

{¶ 69} We acknowledge this is a close call. However, based on the above facts and on the circumstances of this case, ultimately we cannot say that but for trial counsel's performance regarding the motion to suppress, there was a reasonable probability the outcome of this case would have been different. Accordingly, appellant fails to demonstrate prejudice and cannot prevail on his claim of ineffective assistance of counsel regarding the motion to suppress.

## B. Motion for Acquittal

{¶ 70} Appellant next contends he received ineffective assistance of counsel because trial counsel failed to move for acquittal under Crim.R. 29 after the close of appellee's case. Specifically, appellant contends appellee failed to establish an essential element of the second charged offense, OVI in violation of R.C. 4511.19(A)(2), by presenting evidence connecting appellant with any prior OVI convictions.

{¶ 71} Here, following the jury verdict finding appellant guilty of both charged offenses, appellee elected to sentence appellant under the first charged offense only, namely OVI in violation of Columbus City Code 2133.01(A)(1)(a). The trial court thereafter imposed sentence as to the first charged offense only. The Supreme Court of Ohio has held that "a conviction is a determination of guilt and the ensuing sentence." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 13. *See State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶ 17. "When it is determined that the defendant has been found guilty of allied offenses of similar import, the trial court must accept the state's choice among allied offenses, merge the crimes *into a single conviction for sentencing*, and impose a sentence that is appropriate for the merged offense." (Emphasis sic.) (Internal quotations omitted.) *State v. J.M.*, 10th Dist. No. 14AP-621, 2015-Ohio-5574, ¶ 48, quoting *State v. Bayer*, 10th Dist. No. 11AP-733, 2012-Ohio-5469, ¶ 21, quoting *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 13.

{¶ 72} Because the trial court imposed sentence only on the violation of Columbus City Code 2133.01(A)(1)(a), appellant cannot show prejudice from trial counsel's failure to move for acquittal for an offense for which he was not sentenced. *State v. Dudley*, 10th Dist. No. 06AP-1272, 2008-Ohio-390, ¶ 32 (finding defendant suffered no prejudice from

alleged error on kidnapping charge because trial court merged kidnapping charge and rape charge and only sentenced on rape charge); *State v. Tullis*, 10th Dist. No. 04AP-333, 2005-Ohio-2205, ¶ 10 (finding no prejudicial error in failure to instruct jury on aggravated assault charge as lesser-included offense of felonious assault where trial court sentenced defendant on attempted murder only, rendering felonious assault verdict without consequence). Accordingly, we find appellant did not receive ineffective assistance due to trial counsel's failure to move for acquittal under Crim.R. 29 following the close of appellee's case.

## C. Failure to Request Jury Instruction on Lesser-Included Offense

{¶ 73} Next, appellant recasts his fourth assignment of error as an ineffective assistance of counsel claim, asserting he received ineffective assistance of counsel because trial counsel failed to request a jury instruction on the offense of physical control, which he contends is a lesser-included offense of OVI. We have said that in evaluating whether counsel's performance was deficient, " 'the defendant must overcome the presumption that, under the circumstances the challenged action "might be considered sound trial strategy." ' " *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 37, quoting *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Considering that defense counsel's strategy in this case appeared to rely on the city being unable to prove the element of "operation" beyond a reasonable doubt, we cannot say that counsel's performance was deficient. Accordingly, we find appellant did not receive ineffective assistance of counsel due to the failure to request a jury instruction on physical control.

## D. Witness List

{¶ 74} Appellant next contends he received ineffective assistance of counsel because trial counsel failed to provide a witness list in advance of trial. As a result, appellant contends he suffered prejudice because he was not able to present the testimony of one of his three witnesses, Jill Ryder.

{¶ 75} "Generally, counsel's decision whether to call a particular witness falls within the purview of trial strategy, and a reviewing court will not second guess that decision." *Williams*, 2017-Ohio-5598, ¶ 45, citing *State v. Davis*, 10th Dist. No. 09AP-869, 2010-Ohio-4734, ¶ 18. Additionally, "a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." *State v. Brown*, 38 Ohio St.3d 305, 319 (1988).

{¶ 76} Here, the trial court ruled that it would permit appellant's witnesses to testify despite counsel's failure to provide appellee with a list of witnesses prior to trial. Because appellee had not been able to find records on Ryder prior to trial, the court stated that "if [Ryder] shows up prior to testifying, we can get some information from her" in order to allow appellee to check her records. (July 31, 2017 Tr. at 11.) The record does not reflect appellant was prevented from calling Ryder as a witness. Furthermore, appellant fails to explain how Ryder's testimony would have assisted his defense. As a result, appellant has failed to demonstrate prejudice. *Columbus v. Oppong*, 10th Dist. No. 15AP-1059, 2016-Ohio-5590, ¶ 30-35; *Dennis* at ¶ 23-24. Accordingly, we find appellant did not receive ineffective assistance of counsel due to the failure to provide a witness list prior to trial.

**E. Voir Dire**

{¶ 77} Appellant next contends he received ineffective assistance of counsel because trial counsel misstated the burden of proof during voir dire. In support of his assertion, appellant points to the following question posed by trial counsel to a prospective juror: "Now, if I were to present you evidence that they --- that there is no possible way that [appellant] could have violated the law, would you have any trouble finding him not guilty?" (July 31, 2017 Tr. at 96.) Here, several factors prevent us from concluding appellant was prejudiced by trial counsel's question.

{¶ 78} First, immediately prior to the question to which appellant objects, trial counsel asked a prospective juror: "You understand the idea of reasonable doubt, that you understand that it is [appellee] that must prove [appellant] was guilty of violating the law beyond a reasonable doubt?" (July 31, 2017 Tr. at 96.) Second, appellee mentioned at several points during voir dire that it bore the burden of proving the elements of the charged offenses beyond a reasonable doubt. Third, both appellant's counsel and appellee asserted during their closing arguments that appellee bore the burden of proving the elements of the offenses beyond a reasonable doubt. Finally, and most importantly, the trial court properly instructed the jury on appellee's burden of proof beyond a reasonable doubt. *State v. Hussein*, 10th Dist. No. 15AP-1093, 2017-Ohio-5519, ¶ 17; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 164; *State v. Petty*, 10th Dist. No. 11AP-716, 2012-Ohio-2989, ¶ 21. As a result, appellant cannot demonstrate that he was prejudiced by trial counsel's question during voir dire and, therefore, has failed to establish ineffective assistance of counsel.

**F. Cumulative Effect**

{¶ 79} Finally, appellant argues the cumulative effect of his trial counsel's alleged errors deprived him of his right to a fair trial. "The cumulative-error doctrine provides that 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.' " *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 152, citing *Powell* at ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus.

{¶ 80} As explained above, none of appellant's individual claims of ineffective assistance of counsel has merit. Appellant cannot establish he is entitled to relief simply by combining those unsuccessful claims together. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 134 (rejecting claim that cumulative effect of counsel's errors and omissions constituted ineffective assistance of counsel where court rejected each of appellant's individual claims of ineffective assistance); *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 173 ("[B]ecause none of Mammone's individual claims of ineffective assistance has merit, he cannot establish an entitlement to relief simply by joining those claims together."); *State v. Cline*, 10th Dist. No. 05AP-869, 2006-Ohio-4782, ¶ 29 ("Finding no instances of ineffective assistance of counsel, we find no cumulative error as a result of the combined effect of the alleged instances of ineffective assistance of counsel."); *Williams*, 2017-Ohio-5598, ¶ 57. Therefore, on review, we cannot find appellant was deprived of a fair trial as a result of the combined effect of the alleged instances of ineffective assistance of counsel. *Belton* at ¶ 152-53.

{¶ 81} Accordingly, we overrule appellant's fourth assignment of error.

**VII. Conclusion**

{¶ 82} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

———————————