OPINION
{¶ 1} Defendant-appellant, Carl A. Davis, Jr., appeals from a judgment of the Franklin County Court of Common Pleas convicting him of possession of cocaine. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On December 28, 2006, defendant was indicted on one count of possession of cocaine, a violation of R.C. 2925.11, and a felony of the fifth degree. Defendant initially pled not guilty. In April 2007, defendant filed a motion to suppress the *Page 2 
evidence seized from him by police. In November 2007, a hearing was held on the motion.
 {¶ 3} The testimony of Columbus Police Officer Matthew Liford, who was the only person to testify at the suppression hearing, indicated the following. Around 3 a.m., on July 31, 2006, Officer Liford and his partner, Officer Berger, were on patrol on Mount Vernon Avenue in the near-east side of Columbus, when they passed a stopped vehicle in which a man was leaning into the passenger-side window. The officers drove around the block and pulled up behind the vehicle without turning on a siren or flashing the vehicle's lights.
 {¶ 4} The two men who were in the vehicle quickly and immediately exited the vehicle and walked in opposing directions. The engine of the vehicle was still running, and the vehicle was at least partially blocking the roadway, with the front end of the vehicle angled toward the curb. Defendant had been sitting in the passenger seat of the vehicle. Officer Liford told defendant to come with him and that he was being detained. Officer Berger detained the vehicle's driver. Due to how quickly defendant and the driver exited the vehicle, the officers decided to handcuff them. The officers were unable to detain the person who had been leaning into the vehicle when they originally passed the vehicle. Defendant briefly choked on something that he was trying to swallow, and Officer Liford walked defendant over to the cruiser to question him. Officer Liford did not frisk defendant for weapons.
 {¶ 5} Officer Liford questioned defendant about his identity, why he exited the vehicle so quickly, and whether the vehicle was stolen. After Officer Liford began to converse with defendant, he noticed that defendant was mumbling, as if his mouth was *Page 3 
full of something. He also noticed a cellophane bag in defendant's mouth. Based on his nine years of experience as a police officer, Officer Liford has learned that people attempt to hide drugs by using cellophane in their mouths and other areas of their bodies. Officer Liford instructed defendant to spit out what was in his mouth, and defendant refused to comply. In view of the circumstances, Officer Liford believed that defendant was attempting to conceal drugs. Officer Liford held defendant and signaled for Officer Berger to assist him. Officer Berger performed "basic pain compliance" on defendant's jaw as a means to get him to open his mouth. (Tr. 17.) The "pain compliance" technique involved the application of pressure on the part of defendant's jaw near his ear. Defendant spit out what was in his mouth, which was determined to be a cellophane bag containing crack cocaine.
 {¶ 6} Based on the evidence presented, the trial court decided to deny the motion to suppress. In view of the denial, defendant pled no contest to the cocaine-possession charge. The trial court found defendant guilty of the offense and duly sentenced him. Defendant appeals and presents the following single assignment of error for our review:
 The trial court erred in failing to suppress evidence taken in an unlawful seizure. This decision violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
 {¶ 7} By his assignment of error, defendant argues that the trial court erred in not granting his motion to suppress evidence. Defendant argues that his initial detention and the subsequent search of his person were constitutionally invalid. According to defendant, the police improperly detained and handcuffed him to question him about the vehicle which was suspected to be stolen, and the police did not have the requisite *Page 4 
probable cause to believe that he was concealing drugs in order to forcibly conduct a search of his person.
 {¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. Consequently, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," and "[accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." State v.Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100. In this case, defendant does not challenge any finding of fact of the trial court. Defendant contends that the trial court erred in determining whether the facts meet the appropriate legal standard. Thus, we must independently determine, without any deference to the conclusion reached by the trial court, whether the facts satisfy that standard.
 {¶ 9} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and Section 14, Article I of the Ohio Constitution, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are coextensive and provide the same protections. State v.Robinette (1997), 80 Ohio St.3d 234, 238-239. "`[T]he underlying command of the Fourth *Page 5 
Amendment is always that searches and seizures be reasonable.'"Wilson v. Arkansas (1995), 514 U.S. 927, 931, 115 S.Ct. 1914, quotingNew Jersey v. T.L.O. (1985), 469 U.S. 325, 337, 105 S.Ct. 733. Evidence is inadmissible if it stems from an unconstitutional search or seizure.Wong Sun v. United States (1963), 371 U.S. 471, 484-485, 83 S.Ct. 407.
 {¶ 10} Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the "`few specifically established and well delineated exceptions.'" Minnesota v.Dickerson (1993), 508 U.S. 366, 372, 113 S.Ct. 2130, quotingThompson v. Louisiana (1984), 469 U.S. 17, 20, 105 S.Ct. 409. An investigative stop, or "Terry stop," is a common exception to theFourth Amendment warrant requirement. Terry v. Ohio (1968), 392 U.S. 1, 20-22,30-31, 88 S.Ct. 1868. A Fourth Amendment seizure, which includes aTerry stop, occurs when, in view of all the surrounding circumstances, a "reasonable person" would have believed that "he was not free to leave."United States v. Mendenhall (1980), 446 U.S. 544, 554, 100 S.Ct. 1870. A police officer may briefly detain an individual for questioning if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.Terry. However, an officer's mere "hunch" is insufficient to justify aTerry stop. Id. at 27. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. State v.Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 11} We find that there were specific and articulable facts to justify an investigatory detention in this case. At 3 a.m., on July 31, 2006, Officer Liford, a nine-year veteran of the Columbus Division of Police, and his partner, passed a vehicle with a *Page 6 
person leaning in the passenger-side window. After circling the block, they pulled their cruiser behind the vehicle, and defendant and the driver hastily exited the still running vehicle that was positioned in a manner that at least partially blocked the roadway. Defendant and the driver began walking in opposite directions. These circumstances, viewed in totality, provided reasonable suspicion that a crime had been committed or was about to be committed. Thus, we find that the decision of Officer Liford to detain defendant was constitutionally valid.
 {¶ 12} Next, we will determine whether the scope of the detention was reasonable. In detaining defendant and the driver, the officers decided to handcuff them. It is defendant's contention that the use of the handcuffs was improper due to the absence of probable cause. Essentially, defendant argues that the detention was an arrest, thus requiring the existence of probable cause before the arrest occurred.
 {¶ 13} An investigative stop "must be `reasonably related in scope to the justification for [its] initiation.'" United States v.Brignoni-Ponce (1975), 422 U.S. 873, 95 S.Ct. 2574, quotingTerry, at 29; see, also, State v. Mays, 119 Ohio St.3d 406,2008-Ohio-4539. When a law enforcement officer's actions go beyond investigating the suspicious circumstances leading to the original stop, the detention becomes an arrest and must be supported by probable cause.State v. Jackson (1996), 110 Ohio App.3d 137, 142, citing Florida v.Royer (1983), 460 U.S. 491, 103 S.Ct. 1319. A "complete restriction" of liberty that is not excessive does not convert an investigatory detention into an arrest. In re Parks, Franklin App. No. 04AP-355,2004-Ohio-6449, at ¶ 11, citing United States v. Bautista (C.A.9, 1982),684 F.2d 1286, 1289. Thus, the use of handcuffs does not automatically convert an investigative stop into an arrest. See, e.g., State v. *Page 7 Carter, Montgomery App. No. 21999, 2008-Ohio-2588. The point at which an investigative detention exceeds its permissible scope and rises to the level of a full-fledged arrest is decided on a case-by-case basis.In re Parks, at ¶ 10, citing United States v. Vite-Espinoza (C.A.6, 2003), 342 F.3d 462, 472.
 {¶ 14} We disagree with defendant's contention that the officers' use of handcuffs in this case converted what began as an investigative stop into an arrest. Officer Liford testified that the handcuffing was a means to reduce the risk that defendant and the driver would flee, which appeared to be a real possibility considering how quickly they exited the still-running vehicle. Additionally, it was a way to secure defendant and the driver in order to question them, without placing them both in the cruiser and allowing them to communicate with each other.
 {¶ 15} We find that it was reasonable for Officer Liford to believe that defendant was a flight risk considering defendant's immediate actions after the officers pulled up in their cruiser. Defendant and the driver, in the words of the officer, "jumped out" of the still-running vehicle, and then started walking away from the vehicle in opposite directions. (Tr. 18.) Using handcuffs as a method of detaining defendant and the driver served the purpose of preventing flight during the investigatory stop. Thus, the use of the handcuffs was a reasonable restraint on defendant's liberty in view of the circumstances that provided the basis for the investigatory stop. Therefore, we conclude that the initial detention of defendant, which included the use of handcuffs, did not constitute an arrest and was constitutionally valid.
 {¶ 16} Lastly, we address defendant's argument that the officers lacked probable cause to forcibly conduct a search of his person. The state argues that the existence of *Page 8 
probable cause and exigent circumstances permitted the officers to conduct a warrantless search of defendant's mouth. We agree with the state.
 {¶ 17} "`[P]robable cause to search, and the presence of exigent circumstances,'" is one of the recognized exceptions to the warrant requirement for a reasonable search. Stone v. Stow (1992),64 Ohio St.3d 156, fn. 4, quoting State v. Penn (1991), 61 Ohio St.3d 720. For this exception to apply, there must be both probable cause and the presence of exigent circumstances. In re Williamson (Dec. 27, 2001), Franklin App. No. 01AP-563. Probable cause exists when the facts and circumstances within the officer's knowledge are such that a prudent person would be warranted in believing that an offense has been or is being committed by the suspect. Beck v. Ohio (1964), 379 U.S. 89,85 S.Ct. 223. "Exigent circumstances" under this exception includes circumstances involving "imminent danger that evidence will be lost or destroyed if a search is not immediately conducted." See State v.Moore (2000), 90 Ohio St.3d 47, citing Cupp v. Murphy (1973),412 U.S. 291, 294-296, 93 S.Ct. 2000.
 {¶ 18} Defendant argues that the circumstances in this case were akin to those found in State v. Bowyer (Aug. 29, 2000), Franklin App. No. 00AP-58. Defendant also relies upon Sibron v. New York (1968),392 U.S. 40, 88 S.Ct. 1889, as support for his contention that there was an absence of probable cause in this case. In Bowyer, the defendant was observed riding a bicycle up to several men in a high-crime area and briefly engaging with them in conversation. The defendant rode away on his bicycle, holding something in his right hand. The police stopped the defendant, grasped both of his wrists, and ordered him to open his clenched fists. When the defendant complied, a folded piece of paper, containing crack cocaine, fell to the ground. The defendant was *Page 9 
charged with possession of cocaine, and he moved to suppress the evidence. The motion was overruled, the defendant entered a plea of no contest, and he was found guilty. On appeal, this court reversed the judgment of the trial court. This court determined that there was an absence of probable cause when the officers ordered the defendant to open his clenched fists. See id.
 {¶ 19} In Sibron, a police officer observed the defendant talking with known drug dealers over an eight-hour period. The officer lacked knowledge as to the content of the conversations and did not witness anything pass between the parties. The officer approached the defendant when he was eating at a restaurant and told him to go outside. Once outside, the officer said to the defendant, "You know what I am after." Id. at 45. The defendant reached into his pocket and the officer also placed his hand in the same pocket discovering envelopes containing heroine. The defendant was convicted on the basis of the evidence seized. Ultimately, the United States Supreme Court reversed the conviction, finding, inter alia, that no probable cause existed until after the officer's search revealed the heroine. See id.
 {¶ 20} Defendant's reliance upon Bowyer and Sibron in this case is unavailing because those cases are factually distinguishable from the present case. The evidence in the case at bar demonstrated that shortly after Officer Liford began to question defendant, he noticed defendant's mumbled speech, which gave the officer the impression that he had something in his mouth. Further observation of defendant's mouth revealed the presence of what appeared to be a cellophane bag. Defendant refused to comply with Officer Liford's instruction to spit out whatever was in his mouth. Officer Liford's experience led him to believe that defendant was trying to conceal drugs *Page 10 
in his mouth through the use of the cellophane bag. After defendant's refusal, the officers, using a compliance technique, applied pressure on defendant's jaw in order to see what was in his mouth.
 {¶ 21} Although the officer did not observe the cocaine in defendant's mouth, the observance of the cellophane bag in defendant's mouth was significant under the surrounding circumstances. Clearly, unlike someone holding something in his or her hand, the presence of a cellophane bag in one's mouth is a peculiar circumstance, especially considering the danger of choking. Attempted concealment of the contents of a cellophane bag would seem to be the only plausible explanation for why a person would place such an item in one's mouth. Indeed, Officer Liford's experience led him to believe that the cellophane bag was in defendant's mouth because defendant was trying to conceal his possession of drugs. This reasonable belief was further supported by Officer Liford's observation, before he started to question defendant, that defendant attempted to swallow the contents of his mouth. The circumstances reasonably compelled Officer Liford to act immediately so as to prevent defendant from swallowing what was in his mouth. See State v.Burnett, Hamilton App. No. C-040386, 2005-Ohio-1323 (involving a defendant who tried to conceal contraband in his mouth from police officers).
 {¶ 22} We find that the facts and circumstances within Officer Liford's knowledge were sufficient to warrant a reasonable belief that defendant was attempting to conceal drugs in his mouth. Moreover, the circumstances compelled immediate action, especially considering defendant had already demonstrated an intent to ingest the contraband. Furthermore, there is no indication that the amount of force applied by the officers in order *Page 11 
to gain defendant's compliance was excessive. Therefore, we conclude that the officers acted lawfully under the circumstances.
 {¶ 23} Based on the foregoing, we conclude that the trial court properly denied defendant's motion to suppress. Accordingly, we overrule defendant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER and FRENCH, JJ., concur. *Page 1