[Cite as *State v. Lee*, 2019-Ohio-3904.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-666 |
| v. | : | (C.P.C. No. 17CR-4633) |
| Dumah M. Lee, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on September 26, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Dumah M. Lee, appeals from a judgment of the Franklin County Court of Common Pleas convicting appellant of carrying a concealed weapon, in violation of R.C. 2923.12, a felony of the fourth degree. For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties presented the following evidence at the evidentiary hearing on appellant's motion to suppress. Jonathan Dillon is a detective with the special investigation unit of the Franklin County Sheriff's Office. Dillon testified that on April 3, 2017, he had parked his marked police cruiser in the Westland Mall parking lot in Franklin Township. At approximately 2:14 p.m., Dillon was conversing with the Franklin Township Police Chief

when a call came over the radio dispatching a unit to the Westland Mall location to investigate a possible domestic disturbance at the local Bob Evans restaurant.

{¶ 3}   According to Dillon, he then observed a man walking with a woman in the mall parking lot.  As Dillon approached the couple, he observed the man yelling at his female companion and pointing his finger in her face in a "very aggressive manner."  (Tr. at 10.)  Dillon could also see that the man had a black backpack over his shoulders.  Dillon made a courtroom identification of appellant as the man he approached in the Westland Mall parking lot on April 3, 2017.

{¶ 4}   According to Dillon, he asked appellant to step away from the woman, but appellant ignored his request and kept screaming at the woman and pointing his finger in her face.  When Dillon attempted to grab appellant's arm in an effort to steer him away from the woman, appellant resisted Dillon by pulling his arm away. Dillon responded affirmatively when the prosecutor asked him: "[A]t that time, did you have reason to think that [appellant] may have the ability to either harm you, himself or maybe others around him at that time?"  (Tr. at 12.)  Dillon testified he and Chief Smith proceeded to forcibly secure appellant against the hood of Dillon's cruiser and place him in handcuffs.

{¶ 5}   When Smith asked appellant if he had any weapons on him, he told the officers that he had a firearm.  Dillon then asked appellant where the firearm was located, and appellant told him it was in the backpack.  At some point during the exchange, Dillon conducted a pat-down search of appellant's person, which included searching appellant's pockets.  A search of the backpack revealed a ski mask, a small amount of marijuana, and a loaded handgun.

{¶ 6}   On cross-examination, Dillon acknowledged he did not know who made the report of possible domestic disturbance, and his search of appellant's person included the inside of his pockets.  Dillon was not certain of the point in time he conducted the pat-down search relative to appellant's admission that he had a firearm.[1]  Dillon told appellant's trial

---

[1] Dillon testified as follows:

> Q. And you patted him down?
> A. Yes.
> Q. That involved going in his pockets?
> A. Yes.
> Q. Okay.  And while you were going through his pockets, he said he had a gun in his book bag; is that right?

counsel that appellant was not free to leave at the point in time when Dillon attempted to grab appellant's arm. Dillon's narrative report describing the arrest was admitted into evidence, at appellant's request, as Defendant's Exhibit A.[2] The narrative report provides, in relevant part, as follows:

> On 4/3/2017, FCSO Det. Dillon was dispatched to a possible domestic dispute in the parking lot of the Westland Mall. Det. Dillon arrived and observed the two individuals matching the description walking in front of the building. *Det. Dillon approached them from the rear and the male suspect, later identified as Dumah Lee * * *, was screaming in the face of the female half. Det. Dillon asked Mr. Lee to step away from the female and Mr. Lee refused. Det. Dillon took hold of Mr. Lee's right arm in an attempt to separate the two individuals. Mr. Lee became combative and tried to fight with Det. Dillon. Mr. Lee was secured on the hood of Det. Dillon's vehicle by Det. Dillon and Franklin Twp. Chief Smith. Mr. Lee was handcuffed and while being patted down stated he had a 9mm handgun on him. Det. Dillon recovered a Hi Point 9mmfirearm serial number P1743481 from Mr. Lee's backpack.*

(Emphasis added.) (Def.'s Ex. A.)

{¶ 7} On cross-examination, Dillon testified when he finally had the chance to question appellant's female companion about the incident with appellant, she stated appellant had not engaged in any physical violence, just shouting and gesturing.

{¶ 8} The trial court ruled from the bench and denied appellant's motion to suppress. The trial court announced its decision as follows:

---

> A. I don't know if it was at the same time I was going through his pockets. It was as he was secured on the hood, the handcuffs, Ms. -- or Chief Smith asked him if he had any weapons.

(Tr. at 19.)

[2]The transcript of the suppression hearing contains the following exchange:

> THE COURT: Does the defense wish to call any witnesses?
> [APPELLANT'S COUNSEL]: No, Your Honor, but we would move for admission of Defendant's Exhibit A.
> THE COURT: Okay.
> * * *
> THE COURT: What was Defense Exhibit A?
> [APPELLANT'S COUNSEL]: That's the narrative summary by the officer.
> * * *
> THE COURT: Okay. Then that is admitted, and the State's exhibits are admitted.

(Tr. at 22-23.)

Okay. Well, I agree with the defense the way it started out, that a public argument is not a criminal activity. Simply two people yelling at each other certainly wouldn't give an officer any right to frisk.

But as so often happens, things build up; and I think when the defendant tried to pull away from him when he took his arm – you know, an officer shows up and there's a heated argument going on between a male and female, you can't just walk away from that. You got to try to break it up.

And then when he tried to break it up and the defendant resisted, then the situation changed. When the defendant ignored him and continued to yell at the woman, they had to physically separate them by putting him over the hood of a car and felt that they had to make an arrest. So that being the case, they obviously had a right to check to see if he was armed.

So I'm going to deny the motion to suppress.

(Tr. at 30-31.)

{¶ 9} Appellant subsequently pleaded no contest to the charge of carrying a concealed weapon, and the trial court sentenced appellant to a one-year term of community control under basic supervision. Appellant timely appealed to this court from the judgment of conviction and sentence.

## II. ASSIGNMENT OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

Before their seizure of the firearm law enforcement officials had arrested [appellant] without probable cause. All evidence obtained as a result of this unlawful arrest should have been suppressed as fruit of the poisonous tree under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Sections 14 and 16 of the Ohio Constitution.

## III. STANDARD OF REVIEW

{¶ 11} The Supreme Court of Ohio articulated the general standard of review for a motion to suppress in *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. *State v. Morales*, 10th Dist. No. 17AP-807, 2018-Ohio-3687. In *Burnside*, the court stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an

> appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
>
> Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.)  *Id.* at ¶ 8-9.

## IV.  LEGAL ANALYSIS

### A.  Appellant's Assignment of Error

{¶ 12}  In appellant's sole assignment of error, appellant argues that police did not have probable cause to arrest him and that the firearm seized in the search of appellant's backpack must be excluded from evidence as the fruit of an illegal search.  We disagree.

{¶ 13}  "Under the Fourth Amendment, warrantless searches are per se unreasonable without prior approval by a judge or magistrate, subject to only a few specific exceptions."  *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 15, citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009), citing *Katz v. United States*, 389 U.S. 347, 357 (1967).  One such exception is a "search incident to a lawful arrest."  *Leak* at ¶ 15.  *See also State v. Edwards*, 10th Dist. No. 15AP-879, 2016-Ohio-4771, ¶ 19.  "The exception for a search incident to a lawful arrest has two rationales: officer safety and ' "safeguarding evidence that the arrestee might conceal or destroy." ' "  *Id.* at ¶ 13, quoting *Leak* at ¶ 16, quoting *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 182, citing *Gant* at 338-39.

{¶ 14}  "A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment."  *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411 (1976).  " 'A search incident to arrest is not only an exception to the warrant requirement; it is also a reasonable search under the United States and Ohio Constitutions.' "  *State v. Johnson*, 10th Dist. No. 16AP-689, 2017-Ohio-5527, ¶ 11, quoting *State v. White*, 10th Dist. No. 07AP-246, 2007-Ohio-7143, ¶ 11, citing *United States v. Robinson,* 414 U.S. 218, 235 (1973); *State v. Mathews*, 46 Ohio St.2d 72, 74-75 (1976).

{¶ 15}  "The test for probable cause to justify an arrest is 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' "  *State v. Hunt*, 10th Dist.

No. 06AP-879, 2007-Ohio-3738, ¶ 15, quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "In determining whether probable cause to arrest existed, a reviewing court should examine the 'totality of the circumstances.' " *Hunt* at ¶ 15, quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). "Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence." *Hunt* at ¶ 15, citing *State v. Young*, 146 Ohio App.3d 245, 254 (11th Dist.2001).

{¶ 16} "An arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *Columbus v. Beasley*, 10th Dist. No. 17AP-629, 2019-Ohio-719, ¶ 58, citing *State v. Darrah*, 64 Ohio St.2d 22, 26 (1980). *See State v. Edwards*, 10th Dist. No. 15AP-879, 2016-Ohio-4771, ¶ 18. " '[A]n officer need not state, "You are under arrest." ' " *Beasley* at ¶ 58, quoting *Columbus v. Clark*, 10th Dist. No. 14AP-719, 2015-Ohio-2046, ¶ 34, quoting *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, ¶ 14 (1st Dist.). " 'Rather, arrest "signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." ' " *Beasley* at ¶ 58, quoting *Clark* at ¶ 34, quoting *Darrah* at 26.

{¶ 17} "Ultimately, 'the point at which an arrest occurs depends on the circumstances of the particular case.' " *Beasley* at ¶ 59, quoting *Columbus v. Galang*, 10th Dist. No. 02AP-1441, 2003-Ohio-4506, ¶ 16, citing *State v. Finch*, 24 Ohio App.3d 38, 39 (12th Dist.1985). " 'The point at which an investigative detention exceeds its permissible scope and rises to the level of a full-fledged arrest is decided on a case-by-case basis.' " *Beasley* at ¶ 59, quoting *In re Parks*, 10th Dist. No. 04AP-355, 2004-Ohio-6449, ¶ 10. "Factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds." (Citations omitted.) *Edwards* at ¶ 19. For example, "the use of handcuffs, while a significant factor in determining whether an individual is subject to an investigatory stop or de facto arrest, is not automatically conclusive." *Beasley* at ¶ 64, citing *Columbus v. Dials*, 10th Dist. No. 04AP-1099, 2005-Ohio-6305, ¶ 29; *Edwards* at ¶ 19; *State v. Davis*, 10th Dist. No. 08AP-102, 2008-Ohio-5756, ¶ 13.

{¶ 18} The trial court concluded that Dillon had probable cause to arrest appellant when he and Smith secured appellant against the hood of Dillon's police cruiser and handcuffed him. At the suppression hearing, Dillon testified as follows:

> Q. Now, Detective, from this encounter you had with Mr. Lee, what type of arrestable offenses can you think of in terms of misdemeanors that you can think of off the top of your head or even felonies?
>
> A. On the first approachment, when he refused my order, he was obstructing my investigation.
>
> Q. Okay.
>
> A. And then the failure to comply when I gave him an order.
>
> Q. Okay.
>
> A. And those are both misdemeanors, both arrestable.

(Tr. at 14.)

{¶ 19} Based on the evidence in the record, we agree with the trial court that Dillon had probable cause to arrest appellant when he and Smith secured appellant against the hood of Dillon's cruiser and placed him in handcuffs. The offense of obstructing official business is defined in R.C. 2921.31 as follows:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
>
> (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

{¶ 20} "The elements of the offense of obstructing official business are an unprivileged act by the defendant, done with a purpose to prevent, obstruct or delay the performance of a public official, and a showing that such act actually hampers or impedes the public official in the performance of his or her duties." *State v. Zefi*, 10th Dist. No. 00AP-950 (Mar. 15, 2001). Accordingly, "one cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires the offender to act." (Citations omitted.) *Id.* "Purposely obstructing official business is determined

from the manner in which it is done, the means used, and all other facts and circumstances in evidence." *State v. Grooms*, 10th Dist. No. 03AP-1244, 2005-Ohio-706, citing *State v. Puterbaugh*, 142 Ohio App.3d 185 (4th Dist.2001), citing *State v. Hardin*, 16 Ohio App.3d 243 (10th Dist.1984). The intent to obstruct, delay, or prevent a public official from carrying out his or her duties may be inferred from appellant's actions. *State v. Partee*, 10th Dist. No. 17AP-804, 2018-Ohio-3878, ¶ 26.

{¶ 21} In *N. Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 85 (9th Dist.1996), officers were dispatched to defendant's residence following a complaint of a disturbance. The evidence showed that defendant repeatedly answered questions the investigating officer posed to his daughter and shouted so that the officer could not obtain the daughter's version of the events that had precipitated the disturbance call. The evidence also showed that, despite several warnings by the investigating officer, defendant continued to interrupt, resisted suggestions that he go into his house to be questioned, and refused to be led away from his daughter after being informed that an investigation of the complaint had to be conducted. The arresting officer testified he arrested defendant when another officer could not subdue defendant so that he could conduct an investigation.

{¶ 22} The trial court convicted defendant of obstructing official business. In his appeal, defendant alleged his conviction was not supported by sufficient evidence. In rejecting that claim, the court noted that there was "abundant evidence produced at trial that the defendant committed multiple acts which impeded the officers' investigation." *Id.* at ¶ 86. The Ninth District Court of Appeals determined that "it is clear that the officers had probable cause to arrest the defendant for obstructing official business." *Id.*

{¶ 23} In *State v. Williams*, 5th Dist. No. 01-CA-00026 (Dec. 12, 2001), the Fifth District Court of Appeals addressed a similar issue to the one presented in this case. In *Williams*, defendant sought review of the trial court judgment convicting him of possession of crack cocaine and preparation of drugs for sale. Defendant contended that the trial court erred when it denied his motion to suppress evidence obtained by a police officer on the ground that the evidence was obtained in violation of the Fourth Amendment.

{¶ 24} In *Williams*, officers were assisting a bailiff in an eviction when they saw defendant packing up items located near a bong that was sitting on a table. When one of the officers asked defendant for identification, he pushed his way past the officer and,

contrary to the officer's explicit instructions, placed his hand in his pocket. A scuffle ensued between the officer and the defendant, whereon defendant was handcuffed and placed under arrest. During the search of defendant's person, police found a large bag of crack cocaine.

{¶ 25} In affirming appellant's conviction, the Fifth District held a search of defendant's person was constitutionally valid as a search incident to defendant's lawful arrest on the charge of obstructing official business. *Id.* The Fifth District determined that, under the circumstances, officers had probable cause to believe that defendant had obstructed official business in violation of R.C. 2921.31(A). *Id.*

{¶ 26} This court has also decided a case involving a motion to suppress evidence uncovered in a warrantless search incident to an arrest for obstructing official business. In *Zefi*, police stopped defendant's vehicle after observing that the rear license plate was not illuminated. The evidence showed that defendant subsequently refused to produce his license or to cooperate with officers. The evidence also showed that defendant intentionally increased the volume of his car stereo at least twice while the officers attempted to gather information as to his identity so they could determine if defendant had a valid driver's license and issue a traffic citation.

{¶ 27} In *Zefi*, this court noted that a mere refusal to answer questions does not amount to obstructing official business, but where an individual takes affirmative action to hamper or impede the police from finding out his or her identity, the defendant may be found guilty of obstructing official business. *Id.* In affirming the trial court, this court found, under the circumstances, the officers had probable cause to believe defendant committed the offense of obstructing official business. *Id.*

{¶ 28} Here, the evidence supports the trial court's determination that Dillon had probable cause to arrest appellant for obstructing official business prior to the time he conducted the search of appellant's person and backpack. The undisputed evidence shows appellant did more than simply refuse to speak with Dillon. Rather, appellant ignored Dillon's oral command to step away from his female companion and then either pulled away from Dillon or became combative and tried to fight with Dillon when Dillon tried to separate appellant from the woman in order to investigate the possible domestic disturbance. In our view, this evidence is sufficient to warrant a prudent individual in

Dillon's position to believe that appellant had committed an affirmative, unprivileged act with a purpose to prevent, obstruct, or delay Dillon's performance of his investigation into a reported domestic disturbance. The evidence further showed appellant's conduct actually hampered or impeded Dillon's effort to interview appellant's female companion.

{¶ 29} Based on the foregoing, we hold that the weight of the evidence supports the trial court's finding that prior to the point in time when Dillon and Smith secured appellant on the hood of Dillon's cruiser and handcuffed appellant, Dillon had probable cause to arrest appellant for obstructing official business. On this record, we agree with the trial court that Dillon placed appellant under arrest and that Dillon's subsequent search of appellant's person and backpack was a constitutionally reasonable search incident to a lawful arrest. Accordingly, we hold the trial court did not err when it determined the firearm uncovered in the search of appellant's backpack should not be suppressed pursuant to exclusionary rule.

{¶ 30} Having determined that Dillon had probable cause to arrest appellant for obstructing official business, we need not address the alternative argument of plaintiff-appellee, State of Ohio, based on the rule of law in *Terry v. Ohio*, 392 U.S. 1 (1968). Similarly, having determined that Dillon had probable cause to arrest appellant for obstructing official business, we need not address appellant's argument that Dillon did not have probable cause to arrest appellant for failing to comply with an order or signal of a police officer. *See* R.C. 2921.331.

{¶ 31} For the foregoing reasons, appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 32} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and DORRIAN, JJ., concur.

_____